273 So.2d 661 (1973)
David SCOTT and Motors Insurance Corporation
v.
William S. BEHRMAN and Travelers Insurance Company.
No. 5202.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1973.
Rehearing Denied March 13, 1973.
*663 Philip Schoen Brooks, New Orleans, for plaintiff-appellant.
Donald P. Schwarz, Schwarz & Tregle, Metairie, for plaintiff-appellee.
Stewart E. Niles, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Francis J. Mooney, Jr., Curtis, Foster, Hyde & Mooney, New Orleans, for defendant-appellant.
Before REDMANN, LEMMON and GULOTTA, JJ.
REDMANN, Judge.
From a judgment rejecting both principal and reconventional demands for property damages arising out of an intersectional collision, all parties appeal except plaintiff collision insurer.
The only plaintiff-appellant is the owner, who is also father of the minor driver of one car. Plaintiff claims only $100, the balance of his damage claim having been subrogated to his collision insurer. Defendants are the owner-driver and liability insurer of the other car. Defendants' reconvention demanded indemnity or contribution for $5,000 paid by defendant insurer for damages (allegedly totalling $11,595.62) to a pharmacy at the intersection.
Plaintiff's car was being driven on a favored street, defendants' car on a side street controlled by a stop sign. There was evidence from which the trial court could have concluded that plaintiff's car left some 66' of skid marks, and there was expert testimony that the car was still travelling 15 mph at impact and therefore had been travelling 45 mph (or more) in a 30 mph zone.[1] Defendant driver testified he saw plaintiff's car nearly a block and a half away to his right, then seeing no traffic to his left entered the intersection.
Evidently the trial judge concluded the damages were caused by concurrent negligence of both drivers.
No doubt defendant driver was negligent, even accepting his evidence that plaintiff's minor daughter left 66' skid marks and was travelling 45 mph (66 feet per second). Defendant's expert fixed normal reaction time at .75 second, during which she would have travelled 47.5'. That distance plus 66' skid mark indicates she would have been about 115' from impact when she began to react to defendant's car moving into her path. Even if braking had not diminished her speed, it would have taken her 1.75 seconds to travel that 115', and the effect of braking (down to 15 mph at impact) had to increase that time span to over two seconds. During that time defendant driver was moving into her path. He estimated his speed at 15 mph or 22 fps, *664 at which rate he would have cleared the intersection. Assuming his average speed was only five mph or 7.33 fps, he would have travelled 15' in two seconds; if his speed were 10 mph, he would have travelled 30' in two seconds. Photographs of the intersection show Prytania has two lanes with parking space on each side; it appears to be no more than 30 to 35' from one curb of the street to the beginning of the parking space on the other side, upon passing which point defendant driver would have cleared plaintiff's driver's path. When struck, his car had thus travelled only 30 to 35' from its stopped position. We therefore conclude that he began to enter the intersection at a time only slightly before plaintiff's driver's reaction began (when she was 115' away from impact), probably when she was 150' or so from the corner. His testimony that she was a block and a half away (say 450') when he saw her is either incorrect, or he waited four or five seconds before moving and did not look again. Moving into the path of a car 150' away on a 30 mph, right-of-way street is in our judgment a breach of the duty owed to the motorist on the superior street to yield the right of way and not attempt to cross when it is hazardous to do so, R.S. 32:123.
However, it is also clear that in the 115' distance remaining when plaintiff's driver in fact saw defendants' car and began to react, she could have stopped if she had been travelling at the statutory limit of 30 mph. Her per se negligence was therefore a direct cause of her inability to stop in time to avoid the accident. This seems clearly to be within the risks the statute was designed to protect against.
Nevertheless the minor's concurrent causative negligence is not the equivalent of contributory negligence on the part of her father. The father is made vicariously liable for the damages caused by his minor's negligence by C.C. art. 2318; but the minor's negligence is not thereby imputed to the father, at least not as between father and minor or, specifically, minor's insurer, Deshotel v. Travelers Indem. Co., 257 La. 567, 243 So.2d 259 (1971).
Moreover, since the minor (or his insurer) is liable to the father for the father's damage, C.C. art. 2103 would allow the minor (or his insurer) contribution from the other joint tortfeasor, and the minor's negligence does not defeat his own recovery of virile-share contribution. It would be wholly inconsistent to allow that other tortfeasor to escape liability to the father altogether, on some theory that the minor's concurrent negligence was the damaged father's contributory negligence. Accordingly, Deshotel's recognition that art. 2318 does not impute negligence cannot be limited to a father's claims against his minor, but must apply to all claims by the father for direct damage to himself.
Thus the minor's negligence here does not bar the father's recovery for his property damage caused by the minor and defendant driver as joint tortfeasors. But defendant driver is entitled to contribution of half, art. 2103, from the minor and thus from the father individually, as vicariously liable for the minor's tort.
Defendants did by reconventional demand seek indemnity or alternatively contribution, although specifically in respect to their payment of $5,000 to a third party whose property damage was $11,595.62. In view of the liberal intent of our 1960 Code of Civil Procedure (see art. 5051), we believe this demand for contribution is sufficient to include a demand for contribution as to the already-specified damages sought by defendant-in-reconvention himself in his main demand against plaintiffs-in-reconvention. We will therefore allow contribution in favor of defendant driver and against plaintiff father (as vicariously liable for his minor's tort, C.C. art. 2318) for half (C.C. art. 2103) of the damages plaintiff father proved.
And, as a practical matter, we will declare that confusion extinguishes that *665 half of the father's personal claim which is owed both by and to defendant driver.
(We note that defendant insurer having exhausted its property damage limits, plaintiff no longer urges recovery against it. And plaintiff insurer is not a liability insurer and defendants agree it is not liable for contribution.)
We do not grant contribution as to the $5,000, which is less than half of the $11,595.62 defendants allege was the third party's damage. Defendants allege they were released by the third party (but do not allege plaintiff was released) for that payment of less than their share. Thus defendants have not paid "the whole debt", C.C. art. 2104 (nor more than their share), and must be considered as having obtained the division of the debt or waiver of its solidarity, C.C. art. 2100, or their own discharge without discharge of the entire debt, art. 2203. Plaintiff alone remains liable, no longer in solido with defendants, for his half; and that is the only liability that art. 2103 ascribes to him by providing that, as to the debtors in solido, the obligation "should be divided between them".
In respect to the reconventional demand, we reject defendants' contention that defendant driver's contributory negligence does not bar their recovery because not pleaded in plaintiff owner's answer to the reconventional demand. A plaintiff who has pleaded defendant's causative negligence in his petition has thereby, for purposes of "answer" to a reconventional demand based on the same incident, "set forth affirmatively * * * contributory negligence" as required by C.C.P. art. 1005 as made applicable by art. 1035. We construe these articles liberally, and not as ends in themselves, C.C.P. art. 5051. The purpose of requiring pleading of affirmative defenses is prevention of surprise by injection of unexpected issues. Art. 1005's requirement that "the answer" contain such pleading must be understood in the basic context of answer to main demand, where no other pleading by the answerer would exist, and the requirement that the answer set forth affirmative defenses is no more than a requirement that they shall be pleaded. Art. 1005 itself allows their pleading as by incidental demand, and instructs the court, "if justice so requires," to "treat the pleading as if there had been a proper designation."
The judgment appealed from is affirmed except insofar as it dismissed plaintiff's suit entirely, and there is now judgment against defendant William S. Behrman in favor of plaintiff David Scott for $50.00 with legal interest from judicial demand. Each party is to bear his own costs.
Affirmed in part; reversed and rendered in part.
NOTES
[1] Plaintiff as a fact witness disputed the police officer's 66' paced-measurement, asserting he paced 13 paces (during only nine of which could he see skids), or some 39'. And his daughter testified affirmatively that her speed was not 45 mph, but less than 30 mph. Defendant's expert testified a 66' skid could not be left by a car stopping from only 30 mph, since a car travelling at 30 mph requires only 42' in which to come to a complete stop. Thus both plaintiff's and his daughter's evidence contradicts the police officer's testimony of a 66' skid.